IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOSE ANTONIO MARRERO** | ) |
| Petitioner, | ) |
| | ) C.A. No. 00-2155 Pittsburgh |
| | ) Honorable Donetta L. Ambrose |
| | ) Chief United States District Judge |
| | ) THIS IS A CAPITAL CASE |
| **MARTIN HORN, et. Al.** | ) |
| | ) |
| Respondent. | ) |

**COMMONWEALTH'S MEMORANDUM OF LAW IN OPPOSITION OF FOUR GUILTY PHASE CLAIMS**

**Raquel L. Taylor, Esquire.**
**Assistant District Attorney**
**I.D. #90906**
**Erie County Courthouse**
**140 West 6th Street**
**Erie, Pennsylvania 16501**
**PHONE☏814) 451-6419**
**FAX☏814)451-6419**
**E-MAIL:**
**rtaylor@eriecountygov.org**

**Dated: February 25, 2008**

## TABLE OF CONTENTS

FACTUAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. .. 3

PETITIONER'S GUILT PHASE CLAIMS HAVE NOT BEEN EXHAUSTED
 AND ARE PROCEDURALLY DEFAULTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# FACTUAL HISTORY

The factual history set forth herein is taken from the Opinion of the Pennsylvania Supreme Court dated 12-26-96, published following the direct appeal in this case. Commonwealth v. Marrero, 546 Pa. 596, 587 A2d 1102 (1996). (hereinafter cited as Direct Appeal Opinion).

On 1-16-94, a 68 year old woman named Elizabeth Smith was found murdered in her ransacked apartment in the City of Erie; her body was discovered by her son and landlord. Direct Appeal Opinion, pp. 2-3. Police responded to the scene and found the victim, who had emphysema and was dependent upon an oxygen tank, lying on her back, stripped from the waist down with her legs spread apart. Id., p.3. Missing from the residence were a Nintendo game set, a diamond ring, and the victims automobile. Id.

On 1-26-94, Cleveland, Ohio police were contacted by a source who suspected Jose Marrero had killed someone. Id. The source based that suspicion on several facts: although Marrero owned no car, he was driving one around; he had blood stains on his clothing; he had scratch marks on his body. Id. Cleveland police investigated and also learned that Marrero had just returned from a trip to Erie, had given his girlfriend a diamond ring and given her kids a bloodied Nintendo Set. Id. At trial, the car, ring and game set were identified as the victim's. Id. Erie police had also been investigating the crime and had learned from the brother of Marrero's girlfriend, a man who lived in Erie across the street from the deceased, that Marrero had arrived 1-12-94 for an unexpected visit. Id. p. 4. Marrero left the apartment that evening, stating he was going to get some money; he did not return until the next day, and then immediately returned to Cleveland. Id. An acquaintance of Marrero also testified that he had been with Marrero on 1-12-

94 in the vicinity of the victim's home, and that when they parted Marrero indicated he was going to the "old lady's" house. Id.  Forensic and testimonial evidences established that the victim died in the early morning hours of 1-13-94. Id.

Marrero was arrested in Cleveland 1-26-94, charged with receiving stolen property, relating to the victim's car. Id.  The police twice advised him of his Miranda rights and notified the Erie Police. Id., pp. 4-5.  Erie Police arrived in Cleveland within six hours and again advised the accused of his Miranda rights. Id., p. 5.  He waived his rights and agreed to be interviewed, and ultimately videotaped. Id. Prior to the videotaping, his Miranda rights were once again explained to him, and Marrero again waived those rights. Id.  He admitted, during each interview, that he broke into the victim's home, strangled her and stabbed her to make sure she was dead. Id.  At trial, blood and semen evidence from the crime scene was identified as a DNA match to Marrero. Id.  Following a six day trial, Marrero was convicted and sentenced to death, the jury finding that the aggravating circumstance of a killing committed during another felony outweighed the mitigating circumstance relating to use of alcohol. Id., pp. 1-2

## PROCEDURAL HISTORY

Jose Marrero was convicted of murder and other related crimes and on 10-25-94 was sentenced to death, plus 6-12 years incarceration on the other charges. Direct Appeal Opinion, pp. 1-2. A direct appeal followed; since this was a capital case, the appeal was to the Pennsylvania Supreme Court. On appeal, Marrero was represented by new counsel, Attorney Joseph Burt of the Public Defender's Office; at trial, Attorney Timothy Lucas represented Marrero. Appellant's brief set forth four issues, the first of which was sub-divided into four claims. These issues were: (1): the death verdict was produced by passion or prejudice, in that: (a) the prosecutor improperly argued commutation possibilities in the penalty phase, (b) the court denied a mistrial and improperly conditioned giving Simmons charge on another commutation reference, (c) no voir dire allowed on racial bias, and (d) the court refused to instruct the panel that life means life without parole;

(2): the trial court erred in denying suppression of the confessions;
(3): the verdicts were without support in the evidence and against the weight of the evidence;
(4): the penalty was disproportional to other cases.
On 12-26-96, the State Supreme Court affirmed the judgment of sentence.

Marrero next sought discretionary review from the United States Supreme Court, now represented by Attorney Daniel Givelber of Boston. The petition for writ of certiorari raised the Turney v. Murray issue denying voir dire on racial bias and the Simmons/commutation issue. On 11-10-97, the United States Supreme Court denied the petition for certiorari.

Marrero next sought relief by filing a Post Conviction Relief Act (PCRA) petition in the state courts. His initial pro se filing of 12-22-97 resulted in the appointment of Attorney William Hathaway to represent him. On 5-1-98, an Amended PCRA was filed, raising the following claims: counsel was

ineffective for failing to seek evaluations of Marrero relating to competency and the break-down of the attorney-client relationship; counsel was ineffective for failing to timely seek voir dire on racial bias; counsel was ineffective for failing to call witnesses and present evidence in penalty phase regarding mitigating circumstances; counsel was ineffective for advising Marrero not to testify in the penalty phase; counsel was ineffective for failing to argue acceptance of responsibility as a mitigating circumstance; appellate counsel was ineffective for failing to preserve each of these claims.  Following an evidentiary hearing and the filings of briefs by the parties, Judge Connelly issued an Opinion and Order dated 9-16-98, denying the PCRA.  In its Opinion, the Court held that two of the claims were abandoned (advising Marrero not to testify and not arguing acceptance of responsibility).  All other claims were found meritless.

Attorney Hathaway continued to represent Marrero and filed an appeal with the State Supreme Court.  Appellant's brief was filed 12-15-98 and raised six issues for the Supreme Court to consider (a) whether counsel was ineffective for failing to seek competency, psychological and/or intelligence evaluations; (b) whether counsel was ineffective for failing to timely seek voir dire on racial bias; (c) whether counsel was ineffective for failing to investigate witnesses and present mitigating evidence in the penalty phase; (d) whether counsel was ineffective for advising Marrero not to testify at the penalty phase; (e) whether counsel was ineffective for failing to argue accepting responsibility as a mitigating circumstance; (f) whether appellate counsel was ineffective for failing to preserve each of the first five claims. The Commonwealth filed its brief 1-13-99.

Seven months after that, the Defender Association of Philadelphia, Capital Habeas Unit, By Michael Wiseman, Esquire, attempted to intervene in the pending appeal, filing an Application to File Post-Submission Communication and Motion for Remand.  These Submissions attempted to not only argue the issues which were before the Supreme Court, but also attempted, for the first time to add three claims which had never previously been raised in

4

any state court proceeding; that counsel was ineffective for failing to argue suppression based on an illegal arrest, that the 8th Amendment prohibits the execution of a mentally retarded man and that counsel was ineffective for failing to present a diminished capacity defense. The State Supreme Court, Opinion, dated 2-22-00, addressed only those issues which were properly before the Court, the five substantive claims of ineffectiveness raised by Attorney Hathaway in his brief. The Supreme Court then went on to hold that even with regard to those five claims, four were procedurally defaulted. They held that the PCRA Court had summarily dismissed the competency claim as contradicted by the record and the voir dire claim as previously litigated on direct appeal and that Marrero did not argue error on those rulings so the claims were not properly before the Supreme Court. Further, the claims regarding advice not to testify and the acceptance of responsibility had been ruled abandoned by the PCRA court, and that ruling was not challenged in Marrero's brief, so those issues were not properly before the Supreme Court. Finally, the Supreme Court agreed with the lower court's decision on the failure to present mitigating evidence and witnesses, so the denial of the PCRA relief was affirmed. The present federal habeas corpus action then followed.

During the course of the habeas litigation <u>Atkins v. Virginia</u>, 536 U.S. 304 (2002), was decided by the United States Supreme Court. The Court held the Eighth Amendment prohibited the execution of mentally retarded individuals. As a result of the ruling in <u>Atkins</u>, Petitioner filed another post conviction petition raising this very issue on August 15, 2002. This PCRA petition was denied by the Court of Common Pleas November 18, 2002. Petitioner promptly filed an appeal with the Pennsylvania Supreme Court and the case was remanded to the Court of Common Pleas November 21, 2006 for the purpose of conducting a hearing on whether

Petitioner was mentally retarded. The Petition for Writ of Habeas Corpus was held in abeyance until Petitioner exhausted his <u>Atkins</u> claims in state court.

Both Petitioner and the Commonwealth retained experts in anticipation of hearing to be held on whether Petitioner was mentally retarded. The Commonwealth and Petitioner have tentatively reached an agreement to resolve Petitioner's capital litigation without the need for any additional hearings. However, before any deal between the Commonwealth and Petitioner can be finalized the Commonwealth has required that the habeas before the Court be decided.

Therefore, the Commonwealth is submitting this brief addressing the four remaining claims Petitioner raises in his Petition for Writ of Habeas Corpus.

## **PETITIONER'S GUILT PHASE CLAIMS HAVE NOT BEEN EXHAUSTED**

## **AND ARE PROCEDURALLY DEFAULTED**

The four guilt phase claims to be addressed are as follows:

B. Petitioner Was Denied His Rights under the Sixth, Eighth, and Fourteenth Amendments When He Was Tried While Incompetent to Proceed.  The Trial Court Erred in Not Conducting Competency Proceedings and Trial Counsel Was Ineffective for Failing to Litigate Petitioner's Obvious Incompetence (hereafter, Claim B);

D. Petitioner's First Degree Murder Conviction Was Obtained in Violation Of His Sixth Amendment Right to Effective Counsel Because His Trial Attorney Failed to Investigate, Develop, and Present a Diminished Capacity Defense At the Guilt Stage of Trial (hereafter, Claim D);

E. Petitioner's Confessions Were Admitted at Trial in Violation of His Rights Secured by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Because His Mental Retardation, Organic Brain Damage, Illiteracy, and Other Mental Impairments Rendered Him Unable to Make a Knowing and Intelligent Waiver of His Miranda Rights and Any Such Purported Waiver of These Rights Was Involuntary, Trial Counsel Was ineffective for Failing to Litigate this Claim (hereafter, Claim E); and

H. Petitioner's Confession Was Obtained in Violation of the Fourth Amendment to The United States Constitution As it Was the Product of His Warrantless Arrest. Trial Counsel Were All Ineffective for Failing to Litigate This Claim (hereafter, Claim H).

The requirements of exhaustion of state remedies is grounded in the concepts of comity. See 28 U.S.C. Section 2254 (b)(1).  Thus, federal habeas court must ensure that the state courts are first given a full and fair opportunity to apply controlling federal legal principles to the substance of the claims. Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L.Ed. 2d 379 (1982).[1]  It is not enough that a similar state claim was made using the same facts; the Federal Constitutional argument must have been presented to the state courts. Id, at S.Ct. p. 277.  If a petition is "mixed, that is, if some issues have been properly exhausted, but others have not, the

---

[1] It should be noted that because the Commonwealth is addressing the same habeas petition in which we filed an answer in 2001, most portions of this brief are taken from the 2001 answer and only the new relevant facts and arguments have been added.

petition should be dismissed. Rose v. Lundy, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982).

The Commonwealth respectfully submits that exhaustion requirements have not been met with respect to Claims D, E, and H. As noted in the Procedural History section herein, none of these claims were ever presented to the state court until, during the pendency of the PCRA appeal to the Pennsylvania Supreme Court, seven months after all the briefs had been submitted by the parties, current counsel attempted to intervene and add claims. The State Supreme Court properly refused to address these claims on the merits.

Petitioner argues these claims were raised in the Remand Motion filed with the Pennsylvania Supreme Court and that is sufficient to fulfill the exhaustion requirement. However, as Petitioner correctly points out, this very argument has already been made and rejected by this Court. Petitioner made this same argument with respect to his memorandum addressing exhaustion of the Atkins claim and it was rejected by both the Magistrate-Judge and this Court who adopted the ruling without objection from Petitioner. Petitioner is correct in stating this constitutes the law of the case and therefore serves to preclude re-litigation of claims D, E, and H at this time.[2]

The remaining claim is B, which has been exhausted. However, Claim B has been Procedurally Defaulted and Petitioner's request for relief must be denied.

Any claim that has been procedurally defaulted in state courts cannot be raised in a federal habeas unless the petitioner can show cause, not mere inadvertence, for the default. Engle v. Issac, 456 U.S. 107, 102 S. Ct. 1558, 71 L.Ed. 2d 783 (1982). A claimant is not permitted to engage in a deliberate bypass of the state court system, even by claiming it would have been

---

[2] The Commonwealth sees no reason to address the merits of Claims D,E, and H at this time since this very Court has already found these claims were not exhausted.

8

futile to raise the issue. Dugger v. Adams, 489 U.S. 401, 109 S. Ct. 1211, 103 L.Ed. 2d 435 (1989).

The Pennsylvania Supreme Court held that since the issue of failing to challenge competency was summarily dismissed by the PCRA court as contradicted by the record, that Petitioner's failure to properly challenge that holding resulted in a procedural default of that claim. Since the state courts have found this claim to be procedurally defaulted, no habeas can be granted. Engle v. Issac, supra.

Assuming the Court found this claim was not procedurally defaulted, relief must still be denied because the claim lacks merit.

Habeas petitioners claiming incompetency have a threshold burden to positively, unequivocally and clearly show a real, substantial, and legitimate doubt as to the mental capacity of petitioner. Washington v. Johnson, 90 F.3d 945, 950 (5Th Cir. 1996), citing Bruce v. Estelle, 556 F.2d 1051, 1059 (5th Cir. 1976), cert denied, 429 U.S. 1053, 97 S. Ct. 767 (1977). Once a substantial doubt is raised, the petitioner must prove incompetence by a preponderance of the evidence. Id.

Although there are numerous allegations of incompetence, the record is clear that the trial judge, observing the entire proceedings, concluded the accused was willfully uncooperative. See Trial Court Opinion pp. 1-19, PCRA Opinion pp. 6-13. Competence is presumed by the state and does not refer to a specific level of intelligence, but rather the present ability to consult with counsel with a reasonable degree of rationality and a factual understanding of the proceedings. Cooper v. Oklahoma, 517 U.S. 348, 354-55, 116 S.Ct. 1373 L. Ed.2d 498(1996); Dusky v. U.S. 402, 80 S. Ct..788, 4L.Ed.2d 824 (1960). In Cooper v. Oklahoma, supra, at p. 351. Similarly, the other cases cited by petitioner deal with situations where the outward behavior of the accused

9

clearly and squarely raised concerns over competency. Pate v. Robinson, 383 U.S. 375, 385, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).  None of the records cited could have been known to trial counsel since they did not even exist until after the trial was over.  There was absolutely no behavior in court, in the presence of counsel, or in the presence of counsel's investigator which ever led anyone to question Marrero's competency.

Once again, the overwhelming evidence is till at issue, since the question remains whether confidence in the reliability of the verdict is undermined. Washington v. Johnson, supra at p. 953. See United State v. Fabian, 19 F.3d 226, 228 (5th Cir. 1994).  In Washington the accused had organic brain damage, mental retardation and an abused childhood. Washington v. Johnson, supra, at p. 951.  He used prison records, school records and a neuropsychologist to challenge competency at the habeas level. Id.  Yet, he was found to have sufficient ability to consult and understand to be competent. Id. at pp. 949-52.

The burden is on petitioner to have established the factual basis for this claim in state court. See 28 U.S.C. §2254 (e)(2).  The federal system is not an alternative form for issues not sufficiently pursued in state court. See Michael Williams v. Taylor, 529 U.S. 420, 120 S.Ct. 1479, 1492, 146 L.Ed.2d 435 (2000).  In other cases where counsel was found ineffective, the facts were far different.  In one case, the accused was heavily medicated and giving nonsensical answers. Hull v. Freeman, 932 F2d 159, 168 (3rd Cir. 1991).  There is no contemporaneous record of any reason for an evaluation to have been sought that was known to counsel; the mere fact that a record exists doesn't mean there's a reason to look for it. See Michael Williams, supra, at p. 1492.

Petitioner overlooks the fact that the reasons the state Supreme Court concluded Marrero's failure to cooperate was volitional was because the PCRA court made factual findings

that Marrero willfully chose to be uncooperative. PCRA Opinion, pp. 6-13. There is no reason for these findings to be ignored or for relief to be granted on this claim.

## CONCLUSION

Wherefore, for all the foregoing reasons discussed herein, Respondent respectfully requests this Honorable Court enter an Order dismissing the Petition and denying relief.

Respectfully submitted,

s/Raquel L. Taylor
Raquel L. Taylor, Esquire
Assistant District Attorney
I.D. PA 90906
Erie County Courthouse
140 West 6th Street
Erie, PA  16501
Phone (814) 451-5349
Fax (814) 451-6419
E-Mail: rtaylor@eriecountygov.org